UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS STROUD, | : | Case No. 3:23-cv-1687 (SVN) |
| *Petitioner,* | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN STOVER, FCI DANBURY | : | October 17, 2024 |
| *Respondent.* | : | |

## RULING ON MOTION TO DISMISS

*Pro se* Petitioner Marcus Stroud ("Petitioner") is a sentenced federal inmate in the custody of the Bureau of Prisons ("BOP") currently housed at the Federal Correctional Institution ("FCI") in Danbury, Connecticut. Pet., ECF No. 1. Petitioner filed the instant petition under 28 U.S.C. § 2241, asserting (1) facial and as-applied challenges to BOP Code 297, under which he was charged for misconduct in relation to a telephone call and (2) a challenge to the integrity of his disciplinary hearing for the Code 297 violation, which resulted in a finding of guilt and sanctions of loss of good time credit and telephone and commissary privileges. *Id.* ¶¶ 3–4. He requests that the Court declare Code 297 unconstitutionally vague or unconstitutional as applied to him and vacate his incident report, or, in the alternative, vacate his incident report and order a rehearing. *Id.* at 6.

In response to the Court's Order to Show Cause, Respondent filed a motion to dismiss on grounds that Petitioner failed to exhaust his BOP administrative remedies and his Fifth Amendment due process claims lack merit. Resp't Mem., ECF No. 7-1. Petitioner opposes the motion. Pet'r's Opp., ECF No. 9. For the reasons that follow, the Court DENIES the motion to dismiss in part and GRANTS the motion to dismiss in part.

I. **FACTUAL BACKGROUND**

The Court recounts the following factual background as reflected in the materials submitted in support of the petition. The Court also includes facts reflected in Respondent's submissions, including the Incident Report, Notice of Hearing, and Discipline Hearing Officer Report, consistent with the standards set forth below.

Petitioner was convicted of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252(A)(a)(2), and sentenced on January 23, 2018, to a 156-month term of imprisonment followed by a fifteen-year term of supervised release. *See* J., *United States v. Stroud*, No. 7:17-cr-00320 (S.D.N.Y), ECF No. 28. Petitioner was housed at FCI Danbury during the events relevant to his petition.

On September 3, 2023, Petitioner was issued an incident report for a BOP Code 297 violation. *See* Resp't Ex. 1, Magnusson Decl. at Ex. B ("Incident Report"), ECF No. 7-2 at 9. In the Incident Report, Officer Perry stated that on September 3, 2023, at "approximately 8:10 p.m.," he discovered Petitioner "calling a third-party service to re-route his phone call" and that the "call information" showed a telephone number for Petitioner's parent, which was not accurate. *Id.* Officer Perry explained further:

> The inmate spoke to the system and was able to play a voicemail left through the service and then call the number by using voice prompts, time marker 1:36. An unknown female answered the call and held a conversation with the inmate calling him "babe" at time marker 3:59. This service allows the inmate to call an unknown third party without the Bureau being able to verify who the caller is, as well as if the inmate is authorized to call the person. This is a circumvention of the phone monitoring system utilized by the institution.

*Id.* The incident report indicates that it was delivered to Petitioner at 8:38 p.m. on September 3, 2023. *Id.*

Two forms, entitled Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, show what appears to be Plaintiff's signature dated September 5, 2023. Magnusson Decl., Ex. C ("Notice of Discipline Hearing"), ECF No. 7-2 at 11, and Ex. D ("Inmate Rights at Discipline Hearing"), ECF No. 7-2 at 13. The Notice of Discipline Hearing notified Petitioner he was charged with violating Code 297, for "phone abuse-disrupt monitoring." ECF No. 7-2 at 11. Both the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing forms advise inmates about their rights at a disciplinary hearing. *See id.*; *see also* ECF No. 7-2 at 13.

At some later point, the Disciplinary Hearing Officer ("DHO") placed the incident report on "re-write status." Magnusson Decl., Ex. H ("Req. for Ext. of Time"), ECF No. 7-2 at 21. A rewritten incident report—dated September 23, 2023, and authored by Officer Perry—stated that Petitioner was discovered on September 3, 2023, at approximately 8:10 p.m., "calling a third-party service to re-route his phone call" and that "the call information for the number … show[ed] the relationship as his parent" but "this [was] not accurate." Magnusson Decl., Ex. E ("Rewritten Incident Report"), ECF No. 7-2 at 15. Officer Perry explained further:

> The inmate spoke to the system and was able to play a voicemail left through the service and then call the number by using voice prompts, time marker 1:36. An unknown female answered the call and held a conversation with the inmate calling him "babe" at time marker 3:59. This service allows the inmate to call an unknown third party without the Bureau being able to verify who the caller is, as well as if the inmate is authorized to call the person. This is a circumvention of the phone monitoring system utilized by the institution.

*Id.* The Rewritten Incident Report clarifies that time of the subject phone call was 7:51 p.m. *Id.* The Rewritten Incident Report shows a delivery date to Petitioner of September 25, 2023. *Id.*

3

Petitioner later signed an updated Notice of Disciplinary Hearing and Inmate Rights forms on September 26, 2023.  Magnusson Decl., Ex. F (Notice of Discipline Hearing), ECF No. 7-2 at 17, and Ex. G (Inmate Rights at Discipline Hearing), ECF No. 7-2 at 19.

A disciplinary hearing on Petitioner's charge of violating Code 297 was held on October 16, 2023.  Magnusson Decl., Ex. I ("Discipline Hearing Officer Report"), ECF No. 7-2 at 23.  The DHO Report indicates that (1) Petitioner was given advanced written notice of the charge on September 25, 2023; (2) Petitioner was advised of his rights prior to the hearing; (3) Petitioner did not waive his right to a staff representative, and a staff representative appeared for Petitioner at his request; and (4) Petitioner admitted the charge, made a statement, waived his right to witnesses, and was found to have committed the charged Code 297 violation. *Id.* at 23–24. Petitioner's statement was summarized as follows:

> Inmate Stroud attempted to explain how the 3rd party calling system known as 'Corrio,' is an accepted calling system used by the BOP; he further stated, "It was my grandma. I'm gay."

*Id.* at 23.  In finding Petitioner guilty of the Code 297 violation, the DHO Report reviewed the Incident Report, an audio recording of the call, the forms that were provided to Petitioner, and the paperwork relating to the rewrite request.  *Id.* at 23–25.

The DHO explained the finding of guilt as follows:

> Your due process rights were reviewed with you by the DHO and you stated you understood your rights.  The DHO read aloud the incident report.  At no time during the DHO hearing did you raise any procedural issues or request witnesses.  Your requested staff representative was present during your DHO hearing and you presented written documentation as evidence to help with your case. . . .
>
> Your contention that you believed 'Corrio' was an accepted 3rd party calling system authorized by the BOP does not relieve you of the responsibility by the DHO.  BOP rules strictly prohibit 3rd party calling of any sort; this is outlined in the BOP Admission & Orientation Handbook

4

> that you signed for. The DHO finds that you are most likely not being truthful with the DHO in order to not accept full responsibility for your actions. Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge. Consequently, the DHO finds you committed prohibited act 297 – Phone Abuse, Disrupt Monitoring.

*Id.* at 24–25.

Petitioner received sanctions in the form of a twenty-seven-day loss of good conduct time and ninety-day loss of commissary and telephone privileges. *Id.* at 25. The DHO provided the following explanation for the reasons for the sanction or action taken:

> The action/behavior on the of any inmate to use the phone in an unauthorized manner poses a serious threat to the ability of the staff to monitor/control the use of the phone. Your actions of using another inmate's phone account and/or allowing another inmate to use your phone account and/or talking in code and/or participating in a three way phone call disrupted staff's monitoring of the phone account. The sanctions imposed by the DHO were taken to let the inmate know that he/she, and he/she alone, will be held responsible for his/her actions/behaviors at all times.

*Id.* The DHO Report indicates it was delivered to Petitioner at 10:50 a.m. on November 1, 2023. *Id.* at 26.

## II.  LEGAL STANDARD

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison

transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

The Court reviews a motion to dismiss a habeas petition "according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff (or, here, the petitioner), and decide whether the plaintiff/petitioner has stated a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the Court typically may consider only the complaint, or, here, the petition. However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to it because of the petition's heavy reliance "upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). The Court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Here, the Court will consider the documents relating to Petitioner's exhaustion of administrative remedies in this case and his disciplinary proceedings, which are all integral to this Section 2241 Petition.

## III. EXHAUSTION

First, the Court rejects Respondent's argument that the petition should be dismissed for failure to exhaust administrative remedies.

### A. Legal Standard

The exhaustion requirements of the Prison Litigation Reform Act do not apply to this § 2241 petition. *See Cardoza v. Pullen*, No. 3:22-cv-591 (SVN), 2022 WL 3212408, at *4–5 (examining issue and noting Prison Litigation Reform Act exhaustion requirements do not apply to habeas actions). The Second Circuit has, however, imposed a judicial exhaustion requirement for a § 2241 petition. *See Carmona*, 243 F.3d at 634. In other words, the exhaustion requirement for § 2241 petitions is "prudential, not statutory." *Zucker v. Menifee*, No. 03 CIV. 10077 (RJH), 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004).

The burden of demonstrating exhaustion of administrative remedies rests with the § 2241 petitioner, *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009), and failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (lack of exhaustion "results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused") (citing *Carmona*, 243 F.3d at 634); *see also Woodford v. Ngo*, 548

7

U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default.").[1]

The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

### B.  Administrative Appeals of DHO Decision

BOP disciplinary hearings are conducted in accordance with the procedures set forth in 28 C.F.R. § 541.8. Prisoners may appeal adverse findings of the DHO through the Administrative Remedy Program, directing the initial filing to the Regional Director for the region where the inmate is located. 28 C.F.R. part 542, subpart B; 28 C.F.R. § 542.14(d)(2). Once an appeal is filed, the Regional Director is required to respond to an appeal within thirty calendar days unless that time has been extended for the Regional Director to properly decide the matter; the inmate must be informed of the extension in writing. 42 C.F.R. § 542.18. If the inmate has not received a response within the prescribed time, including any extension, "the inmate may consider the

---

[1] It is not clear whether exhaustion requirement for section 2241 petitions should be treated as a jurisdictional issue or as an affirmative defense. *See Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 436 n.18 (D. Conn. 2020) (noting that "[i]t is debatable whether the exhaustion requirement for a [s]ection 2241 habeas petition should be treated as a 'jurisdictional' issue rather than as an affirmative defense"). The Court notes, however, that the exhaustion requirement for a section 2241 petition is "judge-made, rather than statutory, and is subject to various exceptions." *Id.*; *see also Wilkes v. Lamont*, 511 F. Supp. 3d 156, 167 (D. Conn. 2020) (noting that unlike section 2254 petitions, "petitions filed under section 2241 are nevertheless subject to a judicially created discretionary exhaustion requirement"). Thus, the Court considers exhaustion to raise an affirmative defense subject to the standard under Federal Rule of Civil Procedure 12(b)(6).

8

absence of a response to be a denial at that level." *Id.* "An inmate who is not satisfied with the Regional Director's response may submit an appeal to . . . the General Counsel [in the BOP's Central Office] within 30 calendar days from the date the Regional Director signed the response." 42 C.F.R. § 542.15(a). This time limit may be extended if the inmate demonstrates a valid reason for the delay. *Id.* An administrative remedy appeal is not considered finally exhausted until it is considered by the BOP's Central Office. *Chi v. Fernandez*, No. 9:18-CV-1212 (MAD), 2019 WL 6894837, at *6 (N.D.N.Y. Dec. 18, 2019).

In support of dismissal for non-exhaustion, Respondent has submitted the declaration of BOP Legal Assistant Magnusson—who avers she has access to Petitioner's records on SENTRY, the BOP's computerized data base for inmate records—and a copy of Petitioner's complete administrative remedy filing history. Magnusson Decl. ¶¶ 2, 15, Ex. K ("Administrative Remedy History"), ECF No. 7-2 at 32–46. The SENTRY record substantiates that the Northeast Regional Office received Petitioner's Disciplinary Hearing Appeal on November 3, 2023, and extended its thirty-day response period by an additional thirty days to December 21, 2023, under 28 C.F.R. § 542.18, although it never issued a response to Petitioner's appeal. Magnusson Decl. ¶ 17.

Under 28 C.F.R. § 542.18, Petitioner could "consider the absence of a response to be a denial at that level," and file an appeal to the General Counsel's Office. The SENTRY record does not show any further administrative remedies filed by Petitioner relevant to his disciplinary hearing prior to his filing this action in this Court on December 27, 2023. *See id.* Respondent therefore contends that Petitioner has failed to exhaust available administrative remedies.

Petitioner, for his part, asserts that he has, in fact exhausted administrative remedies. He states that he mailed his Disciplinary Hearing Appeal to the Northeast Regional Office on October 27, 2023, but received no acknowledgement of its receipt by the Northeast Regional Office until

December 21, 2023, and therefore did not know when the thirty-day response deadline was. ECF No. 9 at 2. Petitioner says he believed that the Northeast Regional Office's thirty-day response period expired on November 26, 2023, and, therefore, he mailed an administrative remedy to the General Counsel's Office on November 25, 2023. *Id.* at 2–3. He has attached a copy of his Administrative Remedy Appeal to the Central Office dated November 25, 2024.[2] *Id.* at 22 (Ex. C).

Although the BOP appears to have no record of the Central Office appeal form Petitioner has submitted with his response brief, Petitioner's representations suggest that he timely exhausted administrative appeals. Respondent has not filed a reply to contest Petitioner's submission of the copy of his Central Office appeal form dated November 25, 2023. On the present record, the Court cannot be certain that Petitioner failed to exhaust. At the very least, there is a factual dispute about whether he properly exhausted that is not suitable to resolution on a motion to dismiss. Accordingly, the Court DENIES the motion to dismiss on the grounds of non-exhaustion.

## IV.     FIFTH AMENDMENT CLAIMS

Petitioner asserts several claims that fall under the umbrella of the Fifth Amendment's due process clause. First, he claims that Code 297 is unconstitutionally vague on its face and unconstitutional as applied to him. Next, Petitioner asserts that he was deprived of his right to procedural due process in various respects, based on the way the disciplinary hearing was conducted. The Court holds that Petitioner's constitutional arguments fail, but portions of his procedural due process claim can proceed past the motion to dismiss stage.

---

[2] The Court presumes that the date of November 25, 2024, on the Central Office appeal form is a typographical error, as that date has not yet arrived and Petitioner states in his brief that he mailed the appeal form on November 25, 2023.

A. <u>Void For Vagueness</u>

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To satisfy the Fifth Amendment's due process requirements, a penal statute must "'define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Roberts*, 363 F.3d 118, 122 (2d Cir. 2004) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357(1983)); *United States v. Houtar*, 980 F.3d 268, 273 (2d Cir. 2020) ("A statute can be unconstitutionally vague if it either 'fails to provide a person of ordinary intelligence fair notice of what is prohibited,' or is 'so standardless that it authorizes or encourages seriously discriminatory enforcement.'") (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Petitioner contends that BOP Code 297 is unconstitutionally vague in that it does not define a "third-party call." Pet. at 2. He maintains that the regulation's "sweeping" language renders almost any call a 'third-party call'"—including an inmate's call to his attorney that has been forwarded by a third person in the attorney's office—in violation of Code 297. *Id.* He further asserts that the language of Code 297 fails to define what is an acceptable third-party call and what is a third-party call, in violation of the Code. ECF No. 9 at 6–7. Petitioner's argument is not persuasive.

Code 297, which defines High Severity Level Prohibited Acts, prohibits:

> Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.

11

Department of Justice Federal Bureau of Prisons, Inmate Discipline Program (July 8, 2011), at 48, available at https://www.bop.gov/policy/progstat/5270_009.pdf (last visited Oct. 15, 2024).

Petitioner is correct that Code 297 does not specify that a third-party call violates the Code. But the plain language of Code 297 provides adequate notice that an inmate engages in prohibited conducted by using the telephone in a manner "which circumvent[s] the ability of staff to monitor . . . the number called." By using the verb "circumvent," Code 297 prohibits an inmate acting intentionally to avoid or interfere with the staff monitoring of that inmate's telephone use. *See Circumvent*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/circumvent (last visited Oct. 15, 2024) (defining circumvent as meaning "to manage to get around especially by ingenuity or stratagem"); *Circumvent*, Dictionary.com, https://www.dictionary.com/browse/circumvent (last visited Oct. 15, 2024) (defining circumvent as meaning "to avoid … by artfulness or deception; avoid by anticipating or outwitting). The use of a service that allows the inmate to call one phone number visible to officers monitoring the phone and then initiate a call to another number qualifies as circumventing the ability of staff to monitor the original number called. By the plain terms of Code 297, an ordinary person would know that this type of conduct is prohibited. Many district courts agree that Code 297 is not unconstitutionally vague. *See Higa v. Kobayashi*, No. Civ. 19-664 (LEK) (WRP), 2020 WL 2027290, at *6 (D. Hawai'i Apr. 27, 2020) (collecting cases).

Moreover, Code 297 is not unconstitutionally vague as applied to Petitioner. Petitioner's use of a call forwarding service at one telephone number to call a second telephone number—not shown to the staff monitor—through voice prompts falls within the prohibited conduct of Code 297. *See Royer v. Davis*, No. 10-CV-00982-REB, 2011 WL 1843327, at *3 (D. Colo. May 13, 2011) ("Because 'circumventing telephone monitoring procedures' is listed as one of the examples

of prohibited acts under Code 297, Code 297 clearly applies to Applicant's conduct. As a result, the rule is not unconstitutionally vague as applied to Applicant.").

Petitioner claims that the BOP has acquiesced to similar conduct in the past, as he has engaged in a "three-way call" without incurring disciplinary consequences under Code 297. ECF No. 9 at 7. Petitioner offers as examples his telephone calls to the Federal Defender's Office that are forwarded to another professional, such as a social worker or paralegal, or his calls to Westfield Comics that are forwarded to different departments or stores. *Id.* He asserts that BOP staff has advised him that "those calls are fine." *Id.* Petitioner's examples do not suggest arbitrary enforcement or acquiescence of prohibited conduct, however, because none of his examples describe telephone use where his own actions "circumvented" staff monitoring.

Accordingly, BOP Code 297 presents adequate notice about the conduct prohibit and a sufficient standard to prevent BOP's arbitrary or discriminatory enforcement. The Court therefore concludes that Code 297 is not unconstitutionally vague.

B. Procedural Due Process

Inmates deprived of good time credit as a result of disciplinary proceedings are entitled to the minimum due process. *Superintendent v. Hill*, 472 U.S. 445, 453–54 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974) (noting that prisoner's good time credits created under state law gave rise to liberty interest). "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). To state a claim for relief for denial of procedural due process, Petitioner must show that he: (1) possessed an actual liberty interest, and (2) was deprived of that

interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004).

While due process protections afforded a prison inmate do not equate to "the full panoply of rights due a defendant in such [criminal] proceedings," *Wolff,* 418 U.S. at 556, an inmate is entitled "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69. The Second Circuit has emphasized that, in the context of disciplinary proceedings, "the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).

With respect to the outcome of the disciplinary hearing, a court's review of the DHO's written findings is limited to determining whether the DHO disposition is supported by "some evidence." *Hill*, 472 U.S. at 455. This standard is satisfied if there is some "reliable evidence" in the record that supports the disciplinary ruling. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (construing "some evidence" as "reliable evidence" of the inmate's guilt). The "some evidence" standard is "extremely tolerant and is satisfied if 'there is *any* [reliable] evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)); *see also Leyva v. Warden*, 699 F. App'x 4, 5 (2d Cir. 2017) (upholding disciplinary ruling in case involving possession of contraband cell phones where "some evidence" standard was satisfied).

Petitioner asserts several procedural due process deprivations arising from his disciplinary proceedings: (1) he was not allowed to call his grandmother, with whom he claims he was speaking

on the third-party call, as a witness; (2) he was not afforded adequate assistance from his staff advisor; (3) the DHO report failed to provide case-specific reasons for his sanctions relevant to his finding of guilt, as opposed to merely setting forth boilerplate language; and (4) the DHO was biased and failed to fully consider all of Petitioner's evidence. ECF No. 1 at 3–6; ECF No. 9 at 7–14. The first three of these challenges relate to the procedures used at the hearing, and the last relates to whether the DHO's decision was supported by some reliable evidence.

### 1. *Procedures Used at the Hearing*

At the motion to dismiss phase, the Court cannot conclude that the DHO hearing complied with the procedural requirements of *Wolff* related to the opportunity to call witnesses and the assistance of a staff advisor. The written statement of the decision, however, did so comply.

**Opportunity to Call Witnesses.** Petitioner was entitled to a hearing at which he would have the opportunity to present evidence and call witnesses. *Sira*, 380 F.3d at 69. Petitioner claims that he signed the form to decline his right to call witnesses because he had been informed that he would not be allowed to call his grandmother, with whom he claims to have been speaking and who calls him "babe," because she could not testify in person. ECF No. 1 at 5–6; ECF No. 9 at 13; *see also* ECF No. 7-2 at 24 (checking the box for "yes" next to "The inmate waived right to witnesses."). A prisoner's "request to call witnesses may be denied due to 'irrelevance or lack of necessity,' or where 'granting the request would be unduly hazardous to institutional safety or correctional goals.'" *Elder v. McCarthy*, 967 F.3d 113, 124 (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)). The "burden to defend" the denial of a witness falls "upon the official to prove the rationality of the position." *Elder*, 967 F.3d at 124 (quoting *Kingsley*, 937 F.2d at 30–31).

15

Here, Petitioner raises a question about whether he was reasonably denied an opportunity to present witnesses in compliance with procedural due process standards. As this inquiry requires review of evidence beyond the standard permitted for a motion to dismiss, the Court must deny Respondent's motion as to this due process challenge.

**Assistance of Staff Representative.** Petitioner also asserts that he was denied adequate assistance from his requested staff representative to marshal his evidence and present his defense. "Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988).

The Court cannot determine consistent with the standards for a motion to dismiss whether Petitioner received adequate assistance from his staff representative to satisfy due process standards. Thus, the Court denies the motion to dismiss as to Petitioner's due process challenge based on inadequate staff assistance.

**Written Statement of Reasons.** Petitioner claims that the "biggest issue with the proceedings is the DHO's report's 'REASON FOR SANCTION OR ACTION TAKEN.'" ECF No. 9 at 14. Petitioner contends that the reasons given were merely boilerplate, and were not tailored to the facts of his offense. Under *Wolff*, due process requires that the inmate receive a written statement that explains what evidence supported a disciplinary determination. *See Sira*, 380 F.3d at 69, 74. Disclosure of the evidence supporting a ruling "affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects and evidence." *Id.* at 74.

The Court cannot find that the DHO's report was constitutionally inadequate. The Court recognizes that Petitioner was not charged with all of the conduct referenced by the DHO's

16

statement. But the statement adequately informed Petitioner that his "use of the phone in an unauthorized manner poses a serious threat to the ability of the staff to monitor/control" inmate telephone use and thereby warranted the imposition of disciplinary sanctions. ECF No. 7-2 at 25. Accordingly, the motion to dismiss will be granted as to this due process challenge.

### 2. *Some Evidence*

The Court concludes that DHO's determination of guilt was based on some reliable evidence, and therefore comports with due process. Petitioner complains that the Disciplinary Hearing Officer failed to consider his evidence in support of his defense that he believed the telephone forwarding service was not prohibited. ECF No. 9 at 11. He claims the Disciplinary Hearing Officer's determination that he was "most likely not being truthful" is not supported by "scintilla of evidence . . . other than the [Disciplinary Hearing Officer's] personal opinion." *Id.*

The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill,* 472 U.S. at 455–56. At the same time, "[d]ue process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Elder*, 967 F.3d at 129–30 (quoting *Sira*, 380 F.3d at 80).

The DHO's decision here was supported by at least some reliable evidence. The Hearing Officer reasonably interpreted Petitioner's disciplinary hearing testimony as not credible after review of the documentary evidence and listening to the call itself. Consistent with the limited and deferential standard of judicial review of the disciplinary determination, the Court does not question the DHO's credibility assessment or weighing of the evidence presented. *See Hill*, 472 U.S. at 455–56; *Mendez v. Bell*, No. 3:16-cv-02123 (JAM), 2018 WL 4039321, at *3 (D. Conn.

Aug. 23, 2018) (concluding DHO decision was supported by "some evidence" as the petitioner's challenges "go to the weight of the evidence relied on by the DHO" and "[i]t is not the province of this Court, given the limited standard of review, to weigh the evidence presented to the DHO"); *see also Spiaggi v. Pullen*, No. 3:22-CV-276 (CSH), 2023 WL 4458263, at *4 (D. Conn. July 11, 2023) (granting motion to dismiss because disciplinary guilty finding was based on reliable evidence as DHO reasonably interpreted Petitioner's disciplinary hearing testimony). Thus, the motion to dismiss is granted on this ground of Petitioner's due process challenge.

### 3. Remaining Claims

Petitioner challenges the severity of the sanction the DHO imposed, claiming that suspended sanctions would have been appropriate. ECF No. 1 at 4. Respondent has not addressed this ground for habeas relief in the motion to dismiss. Accordingly, this claim shall proceed.

Finally, the petition also asserts that the investigation into Petitioner's conduct was flawed because the officer who wrote the Incident Report interrupted Petitioner when he attempted to relay his version of events to officer who was obtaining his statement about the events. ECF No. 1 at 4-5. Again, as Respondent has not addressed this ground for habeas relief in the motion to dismiss, it shall proceed.

## V. CONCLUSION

For the reasons explained above, the motion to dismiss is GRANTED in part and DENIED in part. Respondent's motion to dismiss is GRANTED as to Petitioner's claims of Fifth Amendment due process violations arising from his claims that (1) BOP Code 297 is facially unconstitutional or unconstitutional as applied to him; (2) the Disciplinary Hearing Officer Report's written statement of reasons was inadequate; and (3) the Disciplinary Hearing Officer determination was not supported by "some evidence" as required by due process. The motion to

dismiss is DENIED as to Respondent's claim that Petitioner failed to exhaust administrative remedies and as to Petitioner's Fifth Amendment procedural due process claims that (1) he was unable to present a witness in his defense; (2) he was provided with inadequate advisor assistance from his staff representative; (3) the sanction he received was too severe; and (4) the investigation was flawed. These asserted grounds for habeas relief remain pending.

By **November 7, 2024**, Respondent must answer the remaining pending claims. *See* Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts; *id.* Rule 1(a) (making these Rules applicable to habeas corpus petitions other than those brought under Section 2254). The Court will then decide whether to conduct an evidentiary hearing. *See id.* Rule 8.

**SO ORDERED** at Hartford, Connecticut, this 17th day of October, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE