UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS STROUD,<br>*Petitioner*, | )  3:23-CV-1687 (SVN)<br>)<br>) |
| v. | )<br>) |
| WARDEN STOVER, FCI DANBURY,<br>*Respondent*. | )<br>)  June 3, 2025 |

## RULING ON PETITION FOR HABEAS CORPUS RELIEF

Sarala V. Nagala, United States District Judge

*Pro se* Petitioner Marcus Stroud ("Petitioner") is a sentenced federal inmate in the custody of the Bureau of Prisons ("BOP") currently housed at the Federal Correctional Institution ("FCI") in Danbury, Connecticut. Pet., ECF No. 1 ¶ 1. Petitioner filed the instant petition under 28 U.S.C. § 2241 challenging disciplinary action taken by BOP resulting from an unauthorized phone call he made. *Id*. at 1, 2. After careful consideration, the Court **DENIES** his petition.

**I.    BACKGROUND**

The Court assumes familiarity with the facts, as set forth in the Court's ruling on Respondent's motion to dismiss. *See Stroud v. Stover*, No. 3:23-cv-1687 (SVN), 2024 WL 4513070 (D. Conn. Oct. 17, 2024). Petitioner is currently serving a 156-month term of imprisonment at FCI Danbury. *Id.* at *1. While he was housed at FCI Danbury, prison officials found Petitioner guilty of violating BOP Code 297, relating to unauthorized use of the telephone.[1] ECF No. 1 ¶ 4. As a result, Petitioner lost 27 days of good conduct credit, 90 days of phone privileges, and 90 days of commissary privileges. *Id.*

---

[1] Specifically, Code 297 relates to "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. § 541.3 tbl. 1.

1

Following the Court's decision on Respondent's motion to dismiss, a subset of Petitioner's original claims remained live: (1) Petitioner's Fifth Amendment procedural due process claims that (a) he was unable to present a witness in his defense at his disciplinary hearing; and (b) he was provided with inadequate advisor assistance from his staff representative at that hearing; (2) the sanction he received was too severe; and (3) the investigation was flawed. *Stroud*, 2024 WL 4513070, at *8–9. The Court ordered Respondent to answer the remaining claims. *Id.* at *9–10.

Respondent thereafter notified the Court that "a rehearing in this matter ha[d] been ordered" "to resolve any procedural due process concerns[] enumerated by this Court in [its ruling on Respondent's motion to dismiss]." Resp't's Suppl. Mem. Supp. Mot. Dismiss, ECF No. 11 at 1. Respondent contended that "the above-described developments moot the instant Petition." *Id.* at 2. The Court ordered Respondent to file a notice containing the date of the rescheduled hearing. Order, ECF No. 12. Respondent then filed a notice stating that the rehearing was held on November 14, 2024. Notice, ECF No. 13 at 1. Respondent maintained that, at the rehearing, Petitioner "was afforded all process due him under Program Statement 5270.09, CN-1 Inmate Discipline Program, including the assistance of a staff representative and the calling of multiple witnesses" and that the Disciplinary Hearing Officer ("DHO") "found Petitioner to have committed a 200-level prohibited act and sanctioned him accordingly (sanction deemed served)." *Id.* Respondent attached a copy of the DHO report from the November 14, 2024, hearing. *Id.* at 3–8.

After Petitioner failed to respond to Respondent's filings,[2] the Court entered an order concluding that "the rehearing renders moot two due process claims raised in the petition: (1) that Petitioner was unable to present a witness in his defense; and (2) that he was provided with inadequate advisor assistance from his staff representative" because "Petitioner was able to present his grandmother and mother as witnesses and was afforded advisor assistance at the rehearing." Order, ECF No. 17.[3]  The Court also noted that Respondent had not moved to dismiss the other two claims that the Court identified as open questions in its ruling on the motion to dismiss—whether the sanction Petitioner received was too severe and whether the investigation was flawed—and that "[t]he rehearing does not appear to have addressed, and thus mooted, these particular issues." *Id.*  Accordingly, in a subsequent order, the Court ordered the parties to brief these two remaining issues. Order, ECF No. 22.  The parties complied.  *See* Resp't's Resp., ECF No. 25; Pet'r's Reply, ECF No. 28.  Because the parties have had an opportunity to fully brief the two remaining issues, the Court will now consider them on the merits.

## II. LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Thus, § 2241 petitions are appropriately used to challenge disciplinary sanctions, including the loss of good time credits.  *See id.*  The

---

[2] Petitioner later stated that he had, in fact, sent "numerous papers, all by way of legal mail," to the Court, including a reply to Respondent's supplemental memorandum in support of his motion to dismiss. *See* Letter, ECF No. 18.  The Court ordered the BOP, through Respondent, to inquire into the circumstances of the missing filings. *See* Order, ECF No. 22.  Ultimately, the Court concluded that the allegedly missing filings had not negatively affected Petitioner's rights, and took no further action as to the missing mail. *See* Order, ECF No. 30.
[3] Petitioner agreed these issues were moot in a status conference held on February 5, 2025.  *See* Order, ECF No. 22 (ordering Respondent to brief the remaining issues only).

petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III. DISCUSSION

### A. Severity of Sanction

Petitioner lost 27 days of good conduct credit, 90 days of phone privileges, and 90 days of commissary privileges as sanctions for the BOP Code 297 violation. ECF No. 1 ¶ 4. As the Court previously noted, "the loss of commissary and phone privileges have already been served and cannot be reinstated." *See* ECF No. 17; *see also* ECF No. 13 at 8 (rehearing report showing these sanctions as "deemed served"). Accordingly, any challenge to these served sanctions is moot. *See, e.g.*, *Brown v. United States*, No. 3:02-CR-341 (EBB), 2013 WL 6728825, at *2 (D. Conn. Dec. 19, 2013) (concluding that habeas petition challenging sentence was moot because sentence had been served and was thus no longer a "live" issue). However, the Court noted that "the 27 days of good conduct time could theoretically be reinstated, if its imposition is found to be a constitutional violation." *See* ECF No. 17. Thus, the loss of good time credits is a live issue that the Court may now consider.

Petitioner contends the loss of 27 days of good conduct credit was too severe, *see* ECF No. 1 at 4; Pet'r's Reply, ECF No. 19 at 2, and that a suspended sentence would have been more appropriate given the facts of the violation. ECF No. 19 at 2. Respondent counters that BOP Program Statement No. 5270.09 *required* a loss of good conduct credit, rather than a suspended sentence, and that a DHO does not have authority to suspend a loss of good conduct credit sanction. *See* ECF No. 25 at 2.

The Court agrees with Respondent, for the reasons described below. The rules contained within BOP Program Statement No. 5270.09 are contained in the Code of Federal Regulations. *See* ECF No. 21 at 5. The Code of Federal Regulations contains a subpart "describ[ing] the Federal Bureau of Prisons' (Bureau) inmate discipline program," which "is authorized by 18 U.S.C. [§] 4042(a)(3)."[4] 28 C.F.R. § 541.1. The inmate discipline program ("IDP") "helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." *Id.* The IDP, which "applies to sentenced and unsentenced inmates in Bureau custody," 28 C.F.R. § 541.2, provides a list of "Prohibited Acts" and "Available Sanctions." 28 C.F.R. § 541.3(a)–(b). "The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low." *Id.* § 541.3(a). The prohibited acts are listed in "Table 1—Prohibited Acts and Available Sanctions." *Id.* That table also lists "available sanctions for committing prohibited acts." *Id.* § 541.3(b). In addition to the types of sanctions listed in § 541.3, inmates "will lose good conduct sentence credit as a mandatory disciplinary sanction" if the inmate belongs to a certain class of inmates and commits certain prohibited acts. *See id.* § 541.4(a)–(b).

According to the September 23, 2023, DHO Report and the November 14, 2024, DHO Report, the DHOs determined that Petitioner committed "297 -- Phone Abuse-Disrupt Monitoring." ECF No. 7-2 at 23–24; ECF No. 13 at 7. A BOP Code 297 violation is listed among the "High Severity Level Prohibited Acts." 28 C.F.R. § 541.3 tbl. 1. Table 1 lists fifteen "Available Sanctions for High Severity Level Prohibited Acts." *See id.* Three sanctions affect sentencing credits: (1) "Forfeit and/or withhold earned statutory good time or non-vested good

---

[4] This subsection provides that "[t]he Bureau of Prisons, under the direction of the Attorney General, shall . . . provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."

5

conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended)"; (2) "Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended)"; and (3) "Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed." *Id.*

Among the sanctions listed in Petitioner's hearing report is "DIS GCT 27 DAYS." ECF No. 7-2 at 25; *see also* ECF No. 13 at 8 (November 14, 2024, hearing report listing same sanction). The parties agree this means a loss of "good conduct time" credit. *See* ECF No. 1 ¶ 4; ECF No. 7-1 at 4; *see also*, *e.g.*, *Boehm v. Pullen*, No. 3:23-CV-36 (OAW), 2024 WL 126939, at *2–3 (D. Conn. Jan. 11, 2024) (noting that sanction of "27 days DIS GCT" for "violation of Code 297 – Telephone Abuse for Uses Other than Criminal Activity" was "27-day loss of good conduct time").

A sanction of 27 days loss of good conduct credit is at the high end of the range of this type of sanction for "High Severity Level Prohibited Acts," *see* 28 C.F.R. § 541.3 tbl. 1("Available Sanctions for High Severity Level Prohibited Acts, Subsection B.1), but it is nonetheless within the permissible range of sanctions available for a BOP Code 297 violation. *See*, *e.g.*, *McRae v. Ebbert*, No. 3:18-CV-2298, 2019 WL 6839314, at *2, *6 (M.D. Pa. Dec. 16, 2019) (denying § 2241 petition after concluding that sanctions of 27 days loss of Good Conduct Time and 90 days loss of telephone privileges for a Code 297 violation "imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO"); *West v. Williams*, No. 2:15-CV-10, 2015 WL 5042158, at *6 (N.D. W. Va. Aug. 25, 2015) (denying § 2241 petition challenging 27 days loss of good conduct credit for BOP Code 297 violation because "an inmate is not entitled to relief on a claim that sanctions were too severe as long as the sanctions imposed were within the limits set in the BOP's disciplinary regulations");

6

*Reyes v. Nash*, No. CIV. 05-2136 (JBS), 2006 WL 361387, at *6 (D.N.J. Feb. 15, 2006) (denying § 2241 petition challenging 27 days loss of good conduct credit for BOP Code 297 violation "because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, [as] they are presumptively constitutional and do not offend the Eighth Amendment proscription against cruel and unusual punishment").

Respondent maintains that not only was this sanction permissible, it was in fact mandatory. *See* ECF No. 25 at 2. The Court agrees. An inmate "will lose good conduct sentence credit as a mandatory disciplinary sanction if [the inmate is] in one of the following two groups: (1) VCCLEA-violent inmates . . . or (2) PLRA inmates." 28 C.F.R. § 541.4(a)(1)–(2). Relevant here, an inmate is a "PLRA inmate" if "[t]he date of [the inmate's] U.S. Code offense was on or after April 26, 1996, and, therefore, under the Prison Litigation Reform Act (PLRA)." *Id.* § 541.4(a)(2). If an inmate is "in one of the above groups and commit[s] a prohibited act, [the inmate] will lose good conduct sentence credit as a mandatory disciplinary sanction." *Id.* § 541.4(b). The amount of credit an inmate will lose "depends on the severity level of the prohibited act(s) committed." *Id.* For inmates who have committed a "High Severity Level Offense[]," those inmates "will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed." *Id.* § 541.4(b)(2).

Petitioner is a "PLRA inmate" because the "date of [Petitioner's] U.S. Code offense was on or after April 26, 1996." *Id.* § 541(a)(2); Judgment, *United States v. Stroud*, No. 7:17-cr-00320 (S.D.N.Y. Feb. 8, 2018), ECF No. 28. And he committed a "High Security Level Offense." *See* ECF No. 7-2 at 23–24; ECF No. 13 at 7; 28 C.F.R. § 541.3 tbl. 1. Thus, under § 541.4(b)(2), Petitioner was required to "lose at least 27 days" of "good conduct sentence credit as a mandatory disciplinary sanction." Accordingly, Petitioner's sanction of loss of 27 days of good conduct credit

7

cannot be considered too severe, given that it was the minimum sanction required by law. *See, e.g.*, *United States v. Compres*, 614 F. App'x 36, 37 (2d Cir. 2015) (summary order) (mandatory minimum sentence was not "unjustly excessive" because "the district court was bound to impose the ten-year mandatory minimum").

Petitioner argues in his reply brief that the BOP does not treat the provisions of 28 C.F.R. § 541.4 as mandatory, citing to at least one case where a sentence of less than the mandatory minimum was imposed for a "Greatest Severity" charge. ECF No. 28 at 2–8; *id.* at 3 (citing *Gormsen v. Snyder-Norris*, No. 15-CV-85 (HRW), 2016 WL 1271026, at *8 (E.D. Ky. Mar. 29, 2016)). Petitioner is correct that in *Gormsen*, the BOP diverged from the mandatory penalties in the applicable regulations. And while Petitioner points to the BOP Program Statement as supporting his argument that the DHO has discretion to impose a sanction either "above the guideline" or "below the guidelines" depending on the circumstances of the case, the same page of the Program Statement makes clear that, for High Severity Level Offenses like this, the penalty is a "minimum of 27 days" of disallowed good time credit. *See* ECF No. 21 at 15.

The result in *Gormsen* and the BOP's obviously conflicting statements notwithstanding, the only issue posed by the petition here is whether Petitioner's loss of 27 days of good conduct credit was so severe as to rise to the level of a constitutional violation. *See* ECF No. 1 at 1, 4. That question turns only on whether that sanction was imposed "within the regulatory scheme for such disciplinary infractions." *Reyes*, 2006 WL 361387, at *6. Thus, even if the Court accepts Petitioner's arguments that the sanction imposed was not mandatory under § 541.4, the DHO still had the discretion to impose the same sanction under § 541.3. *See* C.F.R. § 541.3 tbl. 1. Because the sanction imposed did not exceed the available sanctions set forth in § 541.3, that sanction is "presumptively constitutional and do[es] not offend the Eighth Amendment proscription against

8

cruel and unusual punishment." *Reyes*, 2006 WL 361387, at *6. As such, the good conduct credit sanction imposed cannot be considered too severe to be constitutional, regardless of Petitioner's characterization of the nature of his offense as seemingly benign.

Thus, Petitioner's claim that the sanction was too severe fails on the merits, and the petition must be denied on this ground.

B. <u>Tainted Investigation</u>

Petitioner also maintains that the investigation supporting the disciplinary action was "tainted" because the reporting lieutenant obstructed his ability to provide his statement to the investigating lieutenant. *See* ECF No. 1 at 4–5. Respondent counters that this claim is a "red herring" because the DHO "did not use the investigation Petitioner complains of in arriving at her decision." ECF No. 25 at 3. The Court agrees with Respondent.

The same subpart of the Code of Federal Regulations described above sets forth procedures for the discipline process. *See* 28 C.F.R. § 541.5. "The discipline process starts when staff witness or reasonably believe that [an inmate] committed a prohibited act." *Id.* § 541.5(a). Then, "[a] staff member will issue [the inmate] an incident report describing the incident and the prohibited act(s) [the inmate is] charged with committing." *Id.* "After [the inmate] receive[s] an incident report, a Bureau staff member will investigate it." *Id.* § 541.5(b). As part of the staff member's investigative duties, the staff member will inform the inmate of the charges and describe the inmate's rights. *See id.* § 541.5(b)(1)(A)–(B). Relevant here, the investigating staff member will also "ask[] for [the inmate's] statement," at which time the inmate "may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed." *Id.* § 541.5(b)(2).

9

Petitioner alleges that Lieutenant Anderson, the investigating staff member, "served" Petitioner and asked him for his statement, in accordance with § 541.5(b). ECF No. 1 at 4. When Petitioner attempted to provide his statement, though, Lieutenant Perry, the reporting staff member, "interrupted Petitioner, and questioned him on the facts of the case and, in front of the investigating officer, shot down any and all of the things that Petitioner said without allowing the investigating officers to compile an unbiased report." *Id.* at 4–5. In other words, taking the petition as true, Petitioner was not permitted to provide his statement to the investigating staff member without interference.

In response to this claim, Respondent provided a declaration from the DHO indicating that prison officials determined that the incident report from Lieutenant Anderson's investigation "needed to be rewritten to provide [Petitioner] adequate notice of the misconduct being charged." Mouzon Decl., ECF No. 25-1 ¶ 7. Once the incident report was rewritten, Lieutenant Foisey conducted a new investigation. *See id.* The DHO considered "[t]he findings of Lieutenant Foisey's investigation, but not the earlier investigation . . . at the time of [Petitioner's] disciplinary hearing." *Id.* Thus, Respondent asserts that any alleged errors in the earlier investigation did not taint the outcome of the proceeding before the DHO. Petitioner, in reply, maintains that "there was no investigation done by Lieutenant Foisey," and that "[s]he simply reissued the incident report and sent [Petitioner] on his way." ECF No. 28 at 8.

But even assuming both that Petitioner's allegations are true and that the allegations establish that prison officials did not comply with § 541.5(b)(2), "[t]he prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff v. McDonnell*." *Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007) (*per curiam*). *Wolff* requires, in relevant part, that "the inmate facing disciplinary

10

proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Thus, if the DHO permitted Petitioner to call witnesses—including himself—at the renewed disciplinary hearing, the prison officials' prior failure to comply with § 541.5(b)(2) would not constitute a due process violation. *See Macia*, 219 F. App'x at 233.

The September 2023 hearing report states that "[i]n addition to the previous written account of the incident, the DHO considered [Petitioner's] statement during the DHO hearing in which [Petitioner] attempted to explain how the 3rd party calling system known as 'Corrio,' is an 'accepted' calling system used by the BOP and showed the DHO a newsletter of the 3rd party calling system; [Petitioner] further went on to state, 'It was my grandma. I'm gay.'" ECF No. 7-2 at 25. The DHO later reheard the allegations after the Court decided Respondent's first motion to dismiss. *See* Bridges Decl., ECF No. 11-1 ¶ 3. The November 2024 rehearing report shows that Petitioner provided a statement to the DHO and also presented witness testimony from two witnesses. *See* ECF No. 13 at 4.

The record therefore shows that Petitioner was twice able to give his statement to the DHO directly without interference from investigating staff—once at the original hearing and once at the rehearing. *See* ECF No. 7-2 at 25; ECF No. 13 at 4. When Petitioner gave his statement at the rehearing, he was able to bolster it with witness testimony. *See* ECF No. 13 at 4. Therefore, by providing Petitioner with the process he was due under *Wolff*, *see Macia*, 219 F. App'x at 233, prison officials cured any potential due process violation that may have resulted from interfering with Petitioner's ability to provide a statement to investigators. *See Grillo v. Coughlin*, 31 F.3d 53, 56 (2d Cir. 1994) (recalling its earlier holding in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir.

1986), that "a fair hearing, conforming to the due process standards of *Wolff*, would 'cure' a constitutional violation otherwise resulting from a false accusation"); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (*per curiam*) (noting that a rehearing can cure procedural defects occurring in the original disciplinary hearing).

Accordingly, Petitioner's claim that the investigation into his disciplinary violation was flawed also fails on the merits, and the petition is denied on this ground.

## IV.  CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.  The Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 3rd day of June, 2025.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE